Good morning, Your Honors. I'm Gary Smith, appearing for the appellant, Mary Stewart. I'll be very brief. All right. Your Honors, the issues before this court, I believe, are very clear. I believe there is no question that Franks v. Delaware is controlling. And I also believe that the problem with this case is the there seems to be no dispute that the plaintiff did tell the detective she had information in the house that was helpful. It was evidence with respect to the murder. It wasn't negative to her, but it was evidence. Now, normally, it's enough to get a search warrant to show that there is evidence of a location that is relevant to a crime. It doesn't have to be. The house doesn't have to be occupied by a suspect to be anybody. All you need to do is. Now, they didn't need a search warrant because she was willing to give it to them without one. It's correct. But what rule is there that says that you can't get a search warrant just because the person would give it to you voluntarily? It may be a good rule. I mean, you should think I certainly would agree that the police shouldn't be going, getting warrants and going to a house if they know that all I have to do is knock on the door. But what constitutional violation is that? Well, I don't think that's the problem, Your Honor, with this case. What is the problem? The problem is that Mr. Sylvan knew that he could get any evidence he wanted from his steward. Well, that's what I just said. All he had to do was ask her. And in fact, he had it right in front of him when he went to her home at 10 o'clock at night. I just said that. What constitutional principle is there are a case that says that if you can get the information voluntarily and you know that, that the person is willing to give it to you, that you may not get a warrant. I don't think there is one, Your Honor. Well, then I think that the constitutional issue here is that this man fabricated a story, making Miss Stewart the suspect of a murder of her own daughter. And why did he do that? He did that for a reason of intimidation. He didn't do that because he wanted to gather evidence of a homicide. He went to the extreme of creating a completely fraudulent affidavit, one that is wasn't completely fraudulent, though we accept the pleading. It was largely fraudulent. But but there if you if you apply Frank's, which you can see this controlling, there was enough in there even if you take out all of the false statements to get a search warrant. If you believe anything he says after telling all those lies. But why would anyone believe that man after you look through an affidavit and you find thirty two intentional misstatements and omissions that constitute gross perjury and then say, well, because he says and shows no other evidence of because he says he's conducting an investigation. Therefore, that remaining part that he says we should believe and give him a search. Where does Frank say that that the magistrate has to apply some sort of global credibility test? Frank says if you if you you you subtract the the statements and you add the omissions and then you see if you have probable cause. I mean, that's all it says. I mean, it seems to me you're asking us to create a new principle that that if a person is a big enough liar, that invalidates the entire search warrant. And that is not what Frank says. I mean, it may be a desirable rule, but it's not what the Supreme Court says. Well, certainly the line should be drawn somewhere. And in a situation like this is the most egregious case I've ever seen in my years practicing. And I imagine there's been nothing else before the courts. I've seen nothing else like this. And so I ask, even if Frank says what is left, because Frank's assumes what is left is true, that you have some kind of credible information. And in any case such as Frank's, you have credible information remaining and it is somehow substantiated. And in this case, all that was left behind were more representations by the man who had lied to the court grossly. And and then the court is looking at it and saying, well, he says that he contacted a suicide person. But excuse me, counsel, it's a hindsight test, right? Frank's is necessarily a hindsight test because the magistrate at the time that he or she issues the warrant is crediting information that later turns out not to be true. Of course. So you're you're looking backwards and you're saying that we're going to take out everything that turns out to be factually false or. And we're going to add to the search warrant all the information that is factually true that was omitted. And then we're going to retest and see whether there's probable cause. There's no way that the magistrate could have known that the the officer, as you allege in your complaint, was a was a was a pathological liar. There's no way the magistrate could have known that. But but the facts that are left in the warrant after you take away the the false statements and you add in the the material omissions are still sufficient for probable cause, irrespective. I mean, some of what he said turns out to be true in hindsight. And that's that's the test, isn't it? I would I would ask the court what facts those might be. I have no idea what facts those might be other than that. He claims that Miss Stewart offered him the facts that there was evidence in the house. Let me let me ask you this. I correct that reading the complaint and reading your briefs, that your case depends on being able to establish that the the warrant was unlawfully issued the search warrant that it's an invalid warrant. And it was sought for an unlawful purpose and for an unlawful purpose. That's what if if the warrant was lawful, then you lose your appeal, your case. If the if he had, of course, if he did it for legitimate reasons, no, no, no, no, no. I didn't say that. I said if the decision is that the warrant was issued upon probable cause that it was a valid warrant. Then that's the end of your case. If someone can come to that conclusion, I believe you're right. OK. Now, then we go back to the question I started with. Let's assume that, well, you know, she did tell him what there's evidence in the house. Well, she didn't just tell him. She offered to him in his presence. And then he went and got a warrant for the evidence. Now, why is that unlawful? Why? What's what is there that makes it unlawful to get a warrant for evidence that you're entitled to get? Because that isn't what that is, not what he was doing. He was not going seeking evidence. He's doing it for the wrong motive. He's doing it because he wanted to silence and intimidate her. He was doing it because he wanted to show her that they didn't want to hear from her any longer. That's why he was doing it. He wasn't seeking evidence. So you say that if there's a valid warrant with a bad motive, an improper motive. Or do you say you can't get a warrant if the officer's motive is improper? I'm saying that his statements that he was there to seek evidence was also a fabrication. That he did not go to seek evidence. OK, so let's assume Officer A, who knew nothing about the case, was handed this information and went and got a warrant. That would have been valid. There was enough to get a warrant. If Officer A was handed information and told this is what I'm doing. No, no, just told there is information in this house that we would like. And it was information that the government was entitled to. And with pure innocence, the highest motives, Officer A went to the magistrate, presented this information and got a warrant. On the other hand, Officer B, the officer here, goes with bad motives for the purpose of harassing. But gets a warrant that any officer could get. I would question, Your Honor, whether any magistrate would have issued a warrant if it had been written saying, it is my understanding that Ms. Stewart, the mother of the victim of a homicide, nine years ago, has in her home some documentary evidence that she has offered. But we don't want to accept that. We would rather go get a search warrant. I doubt a magistrate would issue that search warrant. Because that's what the facts would be left with. We have an idea that there might be something this woman is offering us. And therefore, we want a search warrant to her home. I can't imagine a judge issuing that. And I cannot imagine separating what Mr. Silva did and saying that he had somewhat of a legitimate intention to go and gather evidence. I cannot imagine that, because he did not. He had no intent to gather evidence. His purpose was obvious. And why would a person fashion so many lies, accusing someone who is not reasonably a suspect of murder in order to get into her home, knowing that that alone would break her heart and cause her great trauma, and then to say, well, I was doing it for this evidence I want of this murder investigation that I'm not conducting. Because he wasn't. And I think we showed that. Well, it's certainly a disturbing set of facts. Yes, it is, Your Honor. And the judge said so. I know. And Judge Larson felt that way, too. I think he felt compelled to decide, as he did. And that's why we're here, because as far as we're concerned, you are our court of last resort. I don't think you're going to have much luck anywhere else. I don't think so either, Your Honor. We know that. We know that. Thank you very much. Thank you. Chris Lockwood for Martin Silva. The court's questions actually made most of the points I was planning. So I want to address a few things, and I'll stop at that point. I cited a series of cases from the Supreme Court, including the Wren case, in which talking about intent being irrelevant for purposes of the Fourth Amendment. And I filed a supplemental submission of authority to the Supreme Court's Devin Peck case, which I think is pretty closely on the point of the issue. And the court in the case makes exactly the point that was here, that that case had to do with whether an arrest is valid or invalid, depending on whether what the officer writes on the ticket at the time, or in the police report, establishes a violation. And there was a line of- If the officer has been shown to be completely unworthy of belief, does that finding factor into the analysis at all? No, on several reasons. First of all, it's established circuit law that it is not a basis for denying qualified immunity if you find false statements. You also have to find that once you correct the affidavit with everything possibly at issue, that there was no probable cause that a reasonable warrant. But my question goes to whatever is left. I mean, if the person has been totally discredited, is there anything left? That's not this case. In the abstract- Well, if we assume that's this case, if we assume that this affiant has been totally discredited, what's left of the affidavit? Quite a bit, actually, supported by the plaintiff's own testimony and the plaintiff's investigator's own testimony. Taking everything my client said out of the picture and putting in only the plaintiff's testimony and her own witnesses, we have pretty strong evidence that this death was a homicide rather than a suicide. We have expressed statements by the plaintiff herself that she has evidence relevant to what she suspects to be a homicide. That's enough for probable cause. And I think that is enough at that point. A lot of the- Your argument is that once there's enough for probable cause, then there can be no constitutional violation, and therefore, no Section 1983 claims. That's your argument? Correct. And I assume you're saying that no matter what the motive of an officer, if it's to harass people for- because of their race, whatever it is, as long as they could have gotten some kind of a warrant, the fact that they're using it for an improper, unlawful purpose, doesn't affect the warrant. For purposes of the Fourth Amendment, correct. There's a possible claim under some other amendment that is not before us today. The Supreme Court has made that explicit in a series of cases. Well, it is. And when they say it doesn't matter what the officer's motive is, it's an objective test when you stop somebody. And you're stopping because you've got something hanging from his windshield. You're stopping because his brake light's out. You know, all those things that you use to stop people you don't like or want to stop, it doesn't matter as long as you've got an objective basis for it. For purposes of the Fourth Amendment. But is there any case that says that if you go get a warrant to search somebody's house, and the Supreme Court's had a different view about property rights than personal rights, as in the case Justice Scalia's opinion, I think it is about, I've forgotten the name of, you know, when you have these heat sensors from the house. That's invading property. That we take very seriously. So I think we have to look at a case, see whether the Supreme Court has taken the same attitude about invading a person's home for illicit reasons, improper reasons, bad, fake motives. Is there a case that says that you use that test with respect to home invasions by law enforcement? I think all the recent cases I've read are traffic stops or. Yeah, traffic stops, you know, you can do anything with a car. But a home, that's property. We take property rights very seriously. The case that they make pretty much across the board statements that for purposes of the Fourth Amendment, it is purely objective and the intent of the officer is completely irrelevant to the analysis. I think that's the test we have to apply here. A few more points and then I'll stop. There was a pretty strong emphasis that the evidence should have been obtained by way of asking for it, as opposed to getting a search warrant. The Zurcher Supreme Court case, which I cited pretty prominently and brief, talks about whether you should get evidence from a third party by way of a search warrant versus getting it by way of subpoena. And the Supreme Court, in a pretty long opinion, over and over again, says if evidence is believed to be there, relevant to a potential crime, that's enough. And you have the right to get it by way of search warrant, as opposed to getting it by way of a subpoena.  I was there when it happened. Zurcher v. Stamper-Daley, yeah. I didn't catch that at the opinion. I don't think that's a problem, but it's just an interesting coincidence. That is interesting, yes. I was not aware of that. Counsel, you would agree, wouldn't you, that these are pretty disturbing facts to think that an officer of the law would just deliberately fabricate statements to put into a search warrant affidavit. Wouldn't you agree that that's disturbing? Assuming the plaintiff is correct, yes. And so you think that there should be no recourse or remedy when a law enforcement officer deliberately fabricates to the extent that the judge was disturbed by it? One issue I addressed in my brief, because I couldn't find it in any of the cases giving the rationale for the rule. It's a well-established circuit rule. In fact, it's expressly stated in the Herbie v. Estes. This is one part I did mark because of that. This is a quotation from that. Herbie initially argues that a claim of qualified immunity is defeated simply by a showing of deliberately false or misleading statements. Although a well-reasoned argument, it is not the law of the circuit. And then it goes on. What kind of case was Herbie? Was it a home search, or was it a Fourth Amendment case at all? It was a search warrant of a residence. All right. So would, in part, the circuit has not totally ignored the question Judge Reinhart asked in the context of a home search. I think most of the Ninth Circuit cases actually are home searches. The Supreme Court was. But in Herbie, there was an allegation, as there is here, that the qualified immunity analysis was different from the Franks analysis. The reason I'm going into this, and I didn't see any cases. Can you answer that question? Yeah, I'm trying to answer that question. The reason I'm citing that when I'm going in, none of the cases actually give the reason why that is the rule. And I think when you step back a little bit and look at practicalities, there's a pretty good reason for it. The search warrant in this case goes on for quite a few pages. And between truth and false, completely true and completely false, there is a lot of room for differences. You take a multi-page document, and you can almost always find something wrong with it. I do a lot of appellate work. What would be wrong with a rule that said, in addition to the Franks rule, that if an affidavit is riddled with falsehoods, and deliberate falsehoods, and bad faith, that we should disregard the affidavit entirely? Several reasons. Number one, starting point, obviously, is contrary to circuit precedent. But beyond that- To what precedent? Is there a case where they say it's riddled with deliberate falsehoods? The Hervey case is one in which they said, the argument essentially was, the defendant here lied. Therefore, no qualified immunity. No, not just a normal lie by a law enforcement officer. We run into those from time to time. I can't remember running into a case where there's as many lies in such bad faith. I mean, there must be a point where it should invalidate the entire affidavit. That would be very rare, because it's the only case I've ever seen where that rule might be helpful. But no, just normal run-of-the-mill lying by a law enforcement officer doesn't vitiate an affidavit. I don't think there is any logical basis for drawing that rule. What it's getting to is, it's almost any affidavit, you can find something wrong with it. But we're not talking about any affidavit and nitpicking. I mean, we're talking about something that we've never seen before, at least I've never seen before in the cases that come. Deliberate falsehoods. And everyone acknowledges that these falsehoods were deliberate. And it's very disturbing for the court to have to approve of that practice. There's no concession that they were deliberate. We're on summary judgment by the defendant, and we're assuming things are true, as the plaintiff alleges them. We have not, by any means, agreed that these are deliberate. But beyond that, most of what the plaintiff is contending is a falsehood. It has to do with the question of who committed the murder, not whether there was a murder, not whether evidence was there. If you take out all of the statements in contention that have to do with who committed the crime, there's very little left that's in dispute. Plaintiff herself admits, agrees, strongly urges actually, that a murder was committed. She herself admits that there's evidence of the crime at her house. Everything else is simply, who's the guilty party? That really is not relevant to the analysis here. There's one point I want to make, and then I will stop at that point. There's an argument made, and it was made again in the district court as well, that the evidence should have been obtained by giving the evidence, as opposed to get it by way of a search warrant. That was argued quite a bit back and forth. And the district judge answered that himself by saying, for purposes of a criminal prosecution, having a paper trail by way of getting it through a search warrant is a much more convincing paper trail than having it by way of people handing over what they want to hand over. This is at pages 508 to 509 of the record. That Detective Silva sought a search warrant instead of relying on Mary Stewart to voluntarily provide all the pertinent documents and other physical materials relevant to his investigation is of no moment. As plaintiff's counsel conceded at oral argument, there are legitimate investigative and prosecutive reasons why counsel in favor of, which counsel in favor of investigator seeking a search warrant in lieu of relying solely on the good faith of a party who is, at best, a material witness, and at worst, a suspect, to provide all the documents in question. And if it's the one- If the counsel had gone over time considerably, if you could wind it up in one sentence. That's all the points I had to make. Thank you. Thank you. May I have a reading? Yes, you may. We'll give you a minute or two. Because this court reviews de novo the proceedings below, and because the trial court or the district court was compelled to view the evidence in the light most favorable to the plaintiff, appellant herein, the evidence most favorable was that there was no investigation being conducted. We established that. We established that not one witness provided by appellant, who for nine years had been trying to get an investigation conducted, not one witness was ever interviewed, contacted, or otherwise. Our argument was, and we submitted, and that is the evidence most favorable to appellant, was that there was not a criminal investigation being conducted, and that what was being done was being done for an unlawful purpose. That's the case before, Your Honors. And if this is terribly disturbing to you, as it is to Ms. Stewart, and to all of us who have good conscience, you're the only ones with the power to do anything about that. Well, we're the only ones that could let your client recover civil damages. You know, there are other remedies in life other than 1983 suits. Oh, I'm aware of that, Your Honor. But time-wise, I guess that's all there is. I just don't want the responsibility of being the only one who can solve this problem. I'd like to put that in your lap if I can. Do you have any solution to the Hervey case, which says that in order to have this kind of a suit, you have to be able to show that if you struck everything that there would be no warrant issued and that you can't prevail if there could be a warrant? Of course, and that's what I'm trying to say, Your Honor. So you agree with them by that? Well, I think Hervey v. Estes, of course, is a law of this circuit. That's part of the law of this circuit. I think that Hervey assumed, like all cases following Frank's, assumed that there is some valid information in that affidavit, some valid factual recitation. It is. That's the problem. I beg to differ, Your Honor, that there was no investigation. There was evidence in the house. Well, what we're calling evidence of a homicide happened to be some writings that were created by Mary Stewart nine years before. See, the problem is, it's not, I mean, I don't think I'm surprised. I think all of us feel sympathy for the situation you're describing. An officer shouldn't be able to go out and get a search warrant just to harass somebody. But the problem is, we have to have some place where the line gets drawn. We sure do. And this affidavit has information in it which, applying the Frank's test, is true. There is evidence of a crime in the house which would justify the issuance of a search warrant. And your client says there's evidence of a crime in the house. She tells him there's evidence here. Well, she believes there was. She believes she had some documentary evidence and said, here, please take it. That's the problem. But more importantly, more importantly than that, we get a little bit sidetracked when we say, well, gee, there's some small quantum of evidence that the mother of a victim of a homicide is offering. Right. But the rule is, if I'm hearing you right and if I read your brief correctly, is this is so bad that that we should throw all those rules out the window. And my question is, if we're trying to write an appellate decision here, how do you define what is so bad? What is the standard? What is what is the point at which all of these other precedents and rules melt away? And you can say this is the rule that everybody has to follow. What is how do you define that? How about extremely worse than anything we've ever seen before? I'm as a district judge. I'm afraid that would generate a lot of litigation if that were the standard. So but there's more to it, Your Honor. And that is that we what kind of public policy are we protecting? What what kind of people are we protecting? Your best argument is you think the record makes it clear that there was no investigation. Oh, yes, I do. Being conducted at this time. Yes, Your Honor. Your rule, I assume, would say that where there is no investigation being conducted and where the officer is doing it for his own private reasons unrelated to law enforcement. Then why issue a search warrant? All right, well, we'll look and see if we can find something. But it's a tough case. Well, I sure hope you can, Your Honor. Thank you very much. Thank you. Thank you. Thank you both. The case just argued will be submitted.
judges: Reinhardt, Rawlinson, Fogel